Argued and submitted December 16, 1988, reversed and remanded for reconsideration
July 26, 1989

## TEKTRONIX, INC.,
*Petitioner,*

*v.*

## EMPLOYMENT DIVISION et al,
*Respondents.*

(88-AB-265; CA A48000 (Control))

## TEKTRONIX, INC.,
*Petitioner,*

*v.*

## EMPLOYMENT DIVISION et al,
*Respondents.*

(88-AB-826; CA A48952)
(Cases Consolidated)

777 P2d 1005

Roy Pulvers, Portland, argued the cause for petitioner. With him on the briefs was Stoel, Rives, Boley, Jones & Grey, Portland.

Linda DeVries Grimms, Assistant Attorney General, Salem, argued the cause for respondent Employment Division. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

No appearance for remaining respondents.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

DEITS, J.

## DEITS, J.

Petitioner seeks review of two Employment Appeals Board orders holding that claimants' receipt of holiday pay did not occur during a "designated vacation period" and, thus, their unemployment compensation benefits should not be reduced by the amount of holiday pay received. We reverse.

Generally, holiday pay is not considered earnings in determining the amount of unemployment benefits payable to a claimant. ORS 657.150(7). However, ORS 657.150(9) provides that holiday pay is considered as earnings in the determination of unemployment benefits

"if the individual is away from work for a designated vacation period:

"* * * * *

"(b)   By reason of an employer custom, practice or policy established by prior experience * * *."[1]

The question in this case is whether petitioner's yearly holiday season closure is a "designated vacation period" under ORS 657.150(9). Petitioner argues that EAB erred in interpreting the pertinent statutes and that its conclusion that the closure is not a "designated vacation period" is not supported by substantial evidence.

1.      For the last ten years, petitioner has shut down for one or two weeks during the Christmas holiday season. Employes received holiday pay for December 25, 26 and 29, 1986, and January 1 and 2, 1987, and the entire plant was shut down from December 25, 1986, to January 3, 1987. Some departments closed December 22 through December 24, 1986; others did not. Employes received holiday pay for December 25 and 28, 1987, and January 1, 1988, and the entire plant was shut down from December 20, 1987, to January 2, 1988. Employes had the option to take vacation pay or leave without pay for the non-holidays during the closure period or, if they

---

[1] ORS 657.150(10) provides:

"Notwithstanding subsection (7) of this section, payment which has been, is or will be paid to an individual for a holiday which occurs within a vacation period designated pursuant to subsection (9) of this section shall be considered as earnings in the determination of the amount of benefits payable as provided in subsection (6) of this section."

were not entitled to any paid vacation days, they could "borrow" vacation hours.[2] The claimants here chose to take unpaid days of absence.

EAB concluded that petitioner's Christmas closure did not come within the exception of ORS 657.150(9)(b) for designated vacation periods "by reason of an employer custom, practice or policy established by prior experience." The reasons for EAB's decision were that the employer had not designated the time period as "vacation," employes were not required to take the time off as paid vacation and the dates of the shutdown varied among petitioner's departments. Further, EAB concluded that the shutdown was principally for the convenience and economic benefit of petitioner.

Petitioner argues that EAB erred as a matter of law in concluding that, in order for a period to be a "designated vacation period" under ORS 657.150(9)(b), an employer must require its employes to take *paid* vacation. ORS 657.150(9) does not define a "vacation period" as a paid vacation; it does not define the phrase at all. Instead, it states that, *if* an employe is given vacation pay during a period designated by the employer, the payment will be considered earnings. In *Allard v. Employment Div.,* 79 Or App 665, 669, 719 P2d 1325 (1986), we held that "[t]here is nothing in ORS 657.150(9) and (10) which requires that a claimant receive vacation pay in order for a period away from work to be considered a 'designated vacation.' " Further, the legislative history indicates that the purpose was to distinguish between layoffs and customary shutdowns with unemployment benefits being made available only when layoffs were involved, but not for regular, customary shutdowns. Minutes, House Committee on Labor,

---

[2] The 1984 Tektronix Employee Handbook, which was effective for the 1986-87 closure, states:

"Each year at Christmas time most Tek locations close for a week. That week usually includes at least two paid holidays; you can take the other days as paid vacation or unpaid absence, or you can 'borrow' vacation hours with your manager's approval."

The 1987 handbook, which was effective for the 1987-88 closure, states:

"At the end of each calendar year, most Tek locations close for about a week. (A few employees responsible for maintenance, designated field office personnel, etc., are required to work.) That week usually includes at least two paid holidays. The remaining time can be reported as vacation or unpaid absence. If you don't have vacation time, you can 'borrow' vacation hours with your manager's approval."

February 7, 1983, 8-11. In the legislative discussions, petitioner's holiday closure was used as an example of a customary shutdown. Minutes, House Committee on Labor, January 21, 1983, 3; Minutes, House Committee on Labor, February 7, 1983, 7, 9.

**2.** The other principal rationale relied upon by EAB was that the holiday closure was motivated by the company's concerns and was not primarily for the employes' benefit. However, ORS 657.150(9) and (10) do not require that the shutdown be primarily for the benefit of employes in order to be considered a "designated vacation period." The fact that petitioner's customary closure occurred at a time when business was otherwise typically slow does not compel the conclusion that it is not a "designated vacation period" by reason of the employer's custom or practice.

**3.** EAB also relied on the fact that there were variations in the closure dates among petitioner's different departments. Again, neither the language of the statute nor the legislative history requires that closures be precisely the same every year. *See Bergun v. Employment Division,* 81 Or App 580, 726 P2d 1202 (1986). Minor variations between department closures in a particular year do not support the conclusion that petitioner's closures were not customary and regular.

**4.** Finally, EAB relied on the fact that petitioner did not specifically label the closures as "vacation." The employe policy handbooks apparently did not label the period "vacation," but called it "Christmas week closure" or "calendar year-end closure." However, nothing in ORS 657.150(9) or ORS 657.150(10) requires that a "designated vacation period" be called a "vacation" by the employer. Petitioner's yearly closure is a time designated by custom and policy for employes to be off work and is a vacation in the common usage of the word, even if not technically labeled "vacation."

**5.** Petitioner's holiday closure was a "designated vacation period" by reason of an "employer custom, practice or policy established by prior experience." ORS 656.150(9)(b). Therefore, holiday pay for that time must be considered as earnings in determining claimant's unemployment compensation benefits.

Reversed and remanded for reconsideration not inconsistent with this opinion.